IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| JEANETTE MAZUR-TAYLOR, | ) Civil Action No. 3:04-23291-CMC-JRM |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| SOUTH CAROLINA DEPARTMENT OF | ) |
| PUBLIC SAFETY, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |
| | ) |

Plaintiff, Jeanette Mazur-Taylor ("Mazur-Taylor"), filed this action on December 16, 2004.

She filed an amended complaint on February 10, 2005, and a second amended complaint on March

15, 2005. Mazur-Taylor alleges claims under Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C. § 2000e et seq. ("Title VII") .[1]  Defendant, South Carolina Department of Public Safety

("SCDPS"), filed a motion for summary judgment on October 17, 2005.  Mazur-Taylor filed a

memorandum in opposition to summary judgment on December 5, 2005, and SCDPS filed a reply

on December 27, 2005.

SUMMARY JUDGMENT STANDARD

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy

v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  The facts and inferences to be drawn from the

evidence must be viewed in the light most favorable to the non-moving party.  Id.  Courts take

special care when considering summary judgment in employment discrimination cases because

---

[1]Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g), DSC.  Because this is a dispositive motion, this report and recommendation is entered for review by the court.

states of mind and motives are often crucial issues.  <u>Ballinger v. North Carolina Agric. Extension</u> <u>Serv.</u>, 815 F.2d 1001, 1005  (4th Cir.), <u>cert. denied</u>, 484 U.S. 897 (1987).  This does not mean that summary judgment is never appropriate in these cases.  To the contrary, "the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material fact</u>."  <u>Id.</u> (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).  "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice."  <u>Ross v.</u> <u>Communications Satellite Corp.</u>, 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact."  <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact."  <u>Id.</u> at 718-19 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial."  <u>Baber v. Hosp. Corp. of Am.</u>, 977 F.2d 872, 874-75 (4th Cir. 1992).  The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  <u>Id.</u> and <u>Doyle v. Sentry Inc.</u>, 877 F. Supp. 1002, 1005 (E.D.Va. 1995).  Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits (<u>see</u> Fed. R. Civ. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial.  <u>Baber</u>, citing <u>Celotex</u> <u>Corp.</u>, <u>supra</u>.  Moreover, the non-movant's proof must meet "the substantive evidentiary standard

2

of proof that would apply at a trial on the merits." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Servs. Co., 80 F.3d 954 (4th Cir. 1996).

## FACTS

1. On July 17, 2002, Mazur-Taylor began working at SCDPS as an Investigator III in the Office of Professional Responsibility ("OPR"). Second Amended Complaint Para. 6; Plaintiff's Dep. 7; Teresa Kitchens Aff., Para 3.

2. At the time she was hired, Mazur-Taylor became the sixth Inspector III in her unit. See Plaintiff's Dep. 28.

3. The primary duty of an OPR inspector is to investigate allegations of misconduct against employees of SCDPS, including law enforcement officers and other personnel. Defendant's Motion for Summary Judgment, Attachment A.

4. Mazur-Taylor was hired and supervised initially by Lieutenant Phil Grimes ("Grimes"), OPR's Chief Inspector. Grimes and Mazur-Taylor had previously worked together for the Richland County Sheriff's Department and the two were friends. Plaintiff's Dep. 56-57.

5. Grimes states that when he offered Mazur-Taylor the position he advised her that as the last inspector hired, she would be the first to be laid off, should a reduction in force become necessary. Grimes Aff., Para. 5.

6. Grimes, a U.S. Military Reservist, was called to active military duty, effective February 28, 2003. While Grimes was on military leave from SCDPS, Captain Karl McClary

3

("McClary") served as OPR's Acting Chief Inspector.  McClary Dep. 4, 16, 35;  Plaintiff's Dep. 9-10, 56, 93.

7.    Teresa Kitchens ("Kitchens") is the Director of Human Resources at the SCDPS.  At the time of the alleged incidents, she was SCDPS's Employee Relations Manager within the division of Human Resources.  Kitchens Aff., Paras. 1-2.

8.    In early 2003, SCDPS determined that, due to continuing budgetary constraints caused by decreased funding from the State, it was necessary to eliminate one inspector position and one administrative assistant from OPR to reduce personnel costs.  Kitchens Aff., Paras. 4-6.

9.    The South Carolina State Budget and Control Board's Office of Human Resources ("OHR") Regulation 19-719.04 requires that any such elimination of a position at the Department must be accomplished through a Reduction in Force ("RIF") Plan.  The guidelines provide that the employee(s) in the competitive work area with the fewest "retention points" (which in this case were based on years of service and the latest performance review scores) will be laid-off first.  Mazur-Taylor, the most recently hired inspector by over a year, earned the fewest retention points out of the six inspectors and her position was thus selected to be eliminated in the RIF.  Defendant's Motion for Summary Judgment, Attachment B; Kitchens Aff., Paras. 8-9.

10.   The proposed RIF Plan was submitted to the OHR which approved the RIF plan on August 29, 2003, and returned it to the SCDPS for implementation.  Defendant's Ex. H; Kitchens Aff., Paras. 7 and 12.

4

11.    In a letter dated September 2, 2003,[2] Mazur-Taylor was notified that, for budgetary reasons, her position would be eliminated effective October 1, 2003. Defendant's Motion for Summary Judgment, Attachments G and I; Plaintiff's Dep. 8-10, 19-20, 111; Kitchens Aff., Para. 12.

12.    On September 22, 2003, Mazur-Taylor approached Sid Gaulden ("Gaulden"), SCDPS's Director of Public Relations, seeking permission[3] to be interviewed by a University of South Carolina newspaper reporter for an article about the effects of recent SCDPS layoffs on female employees. Gaulden approved Mazur-Taylor's request. Gaulden Dep. 11, 15, 17-18; McClary Dep. 26; Plaintiff's Dep. 16-17, 50, 91-92; Kitchens Aff., Para. 20.

13.    Mazur-Taylor stated that at some point during the conversation Gaulden told her that they needed to get rid of as many females as they could. Mazur-Taylor testified that she asked Gaulden "Well, what do you think, we all need to be barefoot and pregnant?" She claims that Gaulden responded "yes" and banged his hand on the table.[4] Plaintiff's Dep. 92; see also Plaintiff's Dep. 99, 111.

14.    The incident was reported by Mazur-Taylor to Kitchens who told Mazur-Taylor that she would address the issue with Mazur-Taylor's supervisors and with SCDPS's EEO Manager, Alex Belk ("Belk"). Kitchens also encouraged Mazur-Taylor to report the incident to Belk.

---

[2]Mazur-Taylor also testified that McClary told her a few days before she received the letter that she would be laid off. Plaintiff's Dep. 10.

[3]SCDPS guidelines require all media contacts to be cleared through the office of the Director of Public Relations. McClary Dep. 26; Plaintiff's Dep. 90-91.

[4]Gaulden denies making these remarks, but testified that he jokingly agreed with comments by Mazur-Taylor that SCDPS was trying to get rid of women and keep them barefoot and pregnant. See Gaulden Dep. 15-17.

Mazur-Taylor presented Belk with a written internal complaint two days after the alleged

incident.  Kitchens Aff., Para. 21; Belk Dep. 7, 10.

15.    On September 29, 2003, Gaulden received a "Level 1 Reprimand."[5] Defendant's Motion for

Summary Judgment, Attachment M.

16.    Mazur-Taylor's layoff became effective on October 1, 2003.

17.    Mazur-Taylor filed a charge with the South Carolina Human Affairs Commission.  A

right-to-sue notice was issued on September 20, 2004.  Plaintiff's Opposition Memorandum

at 1.

<u>DISCUSSION</u>

Mazur-Taylor alleges that she was laid off based on her gender.  She also alleges that she

was retaliated against for opposing discriminatory practices.  SCDPS contends that: (1) Mazur-

Taylor cannot establish a prima facie case of sex discrimination; (2) SCDPS has articulated a

legitimate, non-discriminatory reason for its actions which Mazur-Taylor fails to show is pretextual;

and (3) Mazur-Taylor cannot establish a prima facie case of retaliation.

---

[5]The reprimand letter provides that the reprimand was imposed for the following reason:
On September 22, 2003, a female employee asked you if she could participate in an interview with the media regarding the recent layoffs of females and minorities in State government.  This employee was previously told that she would be laid off effective October 1, 2003.  You stated that you had no problem with her participating in the interview.  However, during your conversation with this female employee, you also made some derogatory comments about women in the workforce.  When you were later questioned about your remarks, you stated that you were only joking.

Regardless of your intent, your comments were unprofessional and unacceptable.  The Department's Harassment-Free Workplace Policy, Number 129, clearly states that the Department will not tolerate harassment based on gender including inappropriate or demeaning jokes.

Defendant's Motion for Summary Judgment, Attachment M.

6

A.    RIF

Mazur-Taylor claims that she was selected for the RIF based on her gender.  SCDPS contends that Mazur-Taylor fails to establish a prima facie case of discrimination.

A plaintiff can employ the scheme outlined in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973) to establish a prima facie case of discrimination.[6]  To establish a prima facie case in a RIF case, the employee must establish: (1) she was protected under Title VII; (2) she was selected for discharge; "(3) [s]he was performing at a level substantially equivalent to the lowest level of those of the group retained; and (4) the process of selection produced a residual work force of persons in the group containing some unprotected persons who were performing at a lower level than that at which [s]he was performing." <u>Mitchell v. Data Gen. Corp.</u>, 12 F.3d 1310, 1315 (4th Cir.1993)(age discrimination); <u>Corti v. Storage Tech. Corp.</u>, 304 F.3d 336, 341, n. 6 (4th Cir. 2002)(gender discrimination).  Once a plaintiff establishes a prima facie case, the burden shifts to the employer

---

[6]In her opposition memorandum, Mazur-Taylor claims that Gaulden's comments are direct evidence of discrimination.  The Fourth Circuit defines "direct evidence" as evidence that the employer "announced, admitted, or otherwise indicated that [the forbidden consideration] was a determining factor..." <u>Cline v. Roadway Express, Inc.</u>, 689 F.2d 481, 485 (4th Cir. 1982) (citing <u>Spagnuolo v. Whirlpool Corp.</u>, 641 F.2d 1109, 1113 (4th Cir.), <u>cert. denied</u>, 454 U.S. 860 (1981)).  In other words, direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." <u>Fuller v. Phipps</u>, 67 F.3d 1137, 1142 (4th Cir. 1995), abrogated on other grounds, <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (2003) (evidentiary standard for mixed-motive jury instruction).
    Mazur-Taylor has not shown that Gaulden's alleged remarks, although certainly crass and inappropriate, bear directly on the contested employment decision.  The remarks were made after the decision to include Mazur-Taylor in the RIF and were made by a non-decision maker.  Although Mazur-Taylor contends that Gaulden was a member of an Executive Board of SCDPS and had supervisory power over all employees under him, she fails to provide any evidence to support this assertion.  Kitchens states that no such "Executive Board" exists; Gaulden had no supervisory responsibilities over OPR; and Gaulden did not have any role in preparing, approving, or implementing the RIF plan that affected Mazur-Taylor's employment.  Kitchens Reply Aff., Para. 3e.

to articulate a legitimate, non-discriminatory basis for the challenged employment action. McDonnell Douglas, 411 U.S. at 802.  If the employer provides the required evidence of a non-discriminatory reason for the action, the plaintiff must then show that the proffered reasons were not the true reasons for the employment action, but were a pretext for discrimination.  Id. at 804; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

        (1)    Prima Facie Case

SCDPS contends that Mazur-Taylor fails to establish the fourth prong of her prima facie case.   Mazur-Taylor appears to argue that she has established the fourth prong of her prima facie case because her retention points were improperly calculated.  She claims that she was entitled to an additional two points for her performance evaluation rating of "exceeds."[7]  She also claims that the RIF system could easily be interpreted and applied differently.  Plaintiff's Opp. Mem. At 4.

SCDPS Policy 132 provides:

> Retention credits shall be based on the total scores of annual performance appraisals for the proceeding two years and the length of service with the State....For purposes of establishing a total score for annual performance ratings which will be used when computing total retention credits, the following numerical values will be assigned:
>
> | | |
> |---|---|
> | Substantially Exceeds Performance Requirements | 3 |
> | Exceeds Performance Requirements | 2 |
> | Meets Performance Requirements | 1 |
> | Below Performance Requirements | 0 |

---

[7]Mazur-Taylor did not receive her performance appraisal until after the proposed RIF plan was submitted to OHR.  Kitchens states that there is no applicable policy that requires a RIF to be amended to reflect appraisals which become due and are delivered after a proposed RIF has been submitted to OHR.  Kitchens Aff., Para. 11.

> ...One point shall be added...for each full year or six months or more of continuous State service...In a competitive area and class, no employee will be retained over another employee with greater retention credits except when the position of the employee is not to be abolished and the duties cannot be satisfactorily performed by any available employee with greater retention credits in the competitive area and class after a reasonable training period.

Defendant's Motion for Summary Judgment, Attachment C. The retention points for the Inspector III positions were calculated as follows:

| Employee Ranking/Sex | Yrs of Service | Service Points | Performance Ratings | Performance Points | Retention Points |
|---|---|---|---|---|---|
| 1/Male (Thomas Frazier) | 15.96 | 15.96 | 2 at "Exceeds" | 4.0 | 19.96 |
| 2/Male (Mendel Rivers) | 11.90 | 11.90 | 2 at "Meets" | 2.0 | 13.90 |
| 3/Male (William House) | 8.93 | 8.93 | 2 at "Exceeds" | 4.0 | 12.93 |
| 4/Female (Bridgette Lott) | 5.79 | 5.79 | 2 at "Exceeds" | 4.0 | 9.79 |
| 5/Male (Keith O'Quinn) | 2.74 | 2.74 | 1 at "Substantially Exceeds" | 3.0 | 5.74 |
| 6/Female (Jeanette Mazur-Taylor) | 1 | 1 | None | 0 | 1 |

See Defendant's Motion for Summary Judgment at 3-4 and Attachment G (SCDPS RIF Plan dated September 1, 2003).

Even if Mazur-Taylor received an additional two points for her "exceeds" rating on her performance evaluation, she would still have had less retention points than Keith O'Quinn ("O'Quinn"). Mazur-Taylor speculates that if O'Quinn's evaluation had only been "meets" than it would be possible that her retention points would be higher than O'Quinn's retention points. Even

9

if O'Quinn's evaluation was "meets" (no evidence has been submitted to support Mazur-Taylor's theory that O'Quinn's evaluation was a "meets" rather than a "substantially exceeds"),[8] O'Quinn would still have more retention points (3.73) than Mazur-Taylor.

Mazur-Taylor also appears to allege that she has established the fourth prong of her prima facie case because male employees received preferential treatment. Specifically, she alleges that William House ("House") received preferential treatment because House was able to go on a one year leave of absence and return to his job; Tommy Frazier ("Frazier") was allowed to transfer to a position in the State Transport Police ("STP") without a cut in pay or demotion in rank, but she was only offered a job in the STP if she would take a pay cut and demotion in rank; and Gaulden's position was eliminated under the RIF, but he retained employment without applying for a position by being shifted into another section of the agency.

House, on August 18, 2003, requested and received permission to take a one year leave of absence (beginning September 30, 2003) to work as a United Nations' inspector in Kosovo. See McClary Dep. 8-10; Plaintiff's Dep. 21-22; Kitchens Aff., Paras. 15-17. SCDPS provides that Houses's unpaid leave offered short term (one year - September 30, 2003 to September 30, 2004) budgetary relief to OPR,[9] but had no affect on the need to eliminate one inspector position and one administrative assistant position to cut recurring personnel costs. See Defendants' Motion for

---

[8]Further, if O'Quinn received a second performance evaluation, it appears it should have been added to his retention points as performance points are based on the total scores of annual performance appraisals for the proceeding two years. See SCDPS Policy 132.

[9]Contrary to Mazur-Taylor's assertion that House's leave resulted in continuing costs for the SCDPS, Kitchen's states that the SCDPS saved not only House's regular salary during his leave, but the associated costs because he paid his full life insurance premiums and obtained medical coverage through his wife's plan, at no expense to the SCDPS. Kitchens Reply Aff., Para. 3b.

Summary Judgment, Attachment F; McClary Dep. 10-12, 14, 18; Kitchens Aff., Paras. 18-19. Mazur-Taylor fails to show that she and House were similarly situated as to the leave of absence of House, which was approved prior to the approval date of the RIF plan and was effective prior to the effective date of the RIF. Further, she fails to show that House's position should have been eliminated rather than hers, as House, who had worked for SCDPS approximately eight more years than Mazur-Taylor, had almost 12 more retention points that Mazur-Taylor.[10]

Prior to the effective date of the RIF, Colonel Anna Amos, who oversees the STP, offered Mazur-Taylor a full-time position as an inspector/auditor. Mazur-Taylor declined the STP inspector job because it was not a position she desired. Amos subsequently offered Mazur-Taylor a full-time position as a STP weigh station officer, but Mazur-Taylor declined the opportunity because her annual salary in the STP position would be approximately $5,000 lower than she had been earning at OPR. Plaintiff's Dep. 51-55; Kitchens Aff., Paras. 12-13. Tommy Frazier transferred to the STP at his same rank and salary. Frazier, however, had been an officer with the STP prior to working to the OPR. Thus, Mazur-Taylor fails to show that she was similarly-situated to Frazier because he

---

[10]In making a comparison of a plaintiff's treatment to that of employees outside the protected group, a plaintiff must show that the comparables are similarly situated in all relevant respects. See Mitchell v. Toledo Hospital, 964 F.2d 577 (6th Cir. 1992); see also Lanear v. Safeway Grocery, 843 F.2d 298 (8th Cir. 1988)(plaintiff must prove that he and non-protected employee were similarly situated in all respects and the other employee's acts were of comparable seriousness to his own); see also Heyward v. Monroe, 166 F.3d 332, 1998 WL 841494 (4th Cir. Dec. 7, 1998)(unpublished)(employees similarly situated only if they "dealt with the same supervisor, [were] subject to the same standards and...engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." (citations omitted)), cert. denied, 527 U.S. 1036 (1999); Smith v. Stratus Computer, Inc., 40 F.3d 11 (1st Cir. 1994)(in disparate treatment cases, employees must be similar in "all relevant aspects" including performance, qualifications, and conduct)(citation omitted), cert. denied, 514 U.S. 1108 (1995); see also Bogren v. Minnesota, 236 F.3d 399, 405 (8th Cir. 2000)(finding that probationary and non-probationary employees are not similarly situated), cert. denied, 534 U.S. 816 (2001).

was already trained for the job at the STP and was not required to undergo the one-year training period and reduced salary for new STP employees.  See Kitchens Reply Aff., Para. 3c.

Mazur-Taylor also fails to establish the fourth prong of her prima facie case by comparing herself to Gaulden.  Gaulden was not an Inspector III, but a Public Information Officer.  Mazur-Taylor has not asserted that she was qualified for that job or should have been considered for it. Kitchens states that although Gaulden's support staff was laid off in the RIF, his position was determined to be needed on an ongoing basis, the position was under a different job classification than the support positions, and it was not affected by the RIF.  Kitchens Reply Aff., Para. 3e.

(2)     Legitimate, Non-Discriminatory Reason/Pretext

Even if Mazur-Taylor could establish a prima facie case, SCDPS has articulated a legitimate, non-discriminatory reason for her layoff, to reduce its operating costs due to budgetary cuts.  Mazur-Taylor has not shown that this reason was false or that her gender was the real reason for her layoff.  She appears to contend that she should have been allowed to hold House's position, at least during his leave of absence.  SCDPS provides that House's leave of absence allowed cost savings.  Merely questioning the merits of SCDPS's decision does not show that the articulated reason for Mazur-Taylor's layoff was false or was not the real reason for the action.  See, e.g., Hawkins v. PepsiCo, Inc., 203 F.3d 274 (4th Cir. 2000); Kun v. Berkeley County Gov't, 214 F.Supp.2d 559, 566 (D.S.C. 2001), aff'd, 32 Fed. Appx. 689, 2002 WL 570670 (4th Cir. Apr. 17, 2002).  Federal Courts "do not sit as a 'super-personnel department weighing the prudence of employment decisions' made by the defendants."  Anderson v. Westinghouse Savannah River Co., 406 F.3d 248 (4th Cir. 2005), citing DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir.1998); see also Rowe v. Marley Co., 233 F.3d 825, 831 (4th Cir. 2000)("The decision to discharge

[plaintiff] and retain [other employees] is the kind of business decision that we are reluctant to second-guess.").

Mazur-Taylor appears to argue pretext based on a failure to rehire her. She claims that vacancies arose in OPR subsequent to the layoff and SCDPS violated its own policies and South Carolina law (§ 8-11-185) by failing to hire her for vacancies created within a year of the RIF. Mazur-Taylor claims that vacancies in the OPR were created by the transfer of Mendel Rivers to the South Carolina Governor's Security detail, the transfer of Frazier to the STP, and the transfer of Bridgette Lott to the Department of Motor Vehicles. She claims that another male employee was brought into the unit to assist with investigations, the position was not posted, she was not notified of the position, and she was not allowed to compete for this job for which she was qualified. Kitchens states that no vacancies were created for which Mazur-Taylor might have been rehired because the vacancies were intentionally left unfilled in an effort to save expenses. Additionally, Kitchens provides that Lott was transferred to the Division of Motor Vehicles to oversee its newly-created Office of Professional Responsibility unit and that in doing so a portion of Lott's OPR salary allotment and a portion of OPR's caseload was transferred to DMV, reducing the need for OPR inspectors. Kitchens states that for a temporary period OPR needed additional help with its caseload, an employee from Highway Patrol (David Latimer) was temporarily loaned to OPR, Latimer's salary was paid fully by the division of Highway Patrol, and Latimer's salary was never charged to OPR. Kitchens Reply Aff., Paras. 3f-h.

It is unclear, but Mazur-Taylor appears to argue pretext based on a pattern and practice of gender discrimination and/or that SCDPS's actions resulted in an adverse statistical impact on female employees. She fails, however, to provide reliable statistics such that might be admissible

13

or show discrimination. See, e.g., Carter v. Ball, 33 F.3d 450, 457 (4th Cir. 1994) ("[I]f a plaintiff

offers a statistical comparison without expert testimony as to methodology or relevance to plaintiff's

claim, a judge may be justified in excluding the evidence.").

     B.    Retaliation

Mazur-Taylor alleges that SCDPS retaliated against her for complaining of unlawful

employment practices.  SCDPS contends that Mazur-Taylor cannot establish a prima facie case

because she fails to show a causal connection between her protected activity and the layoff; it has

articulated legitimate, non-discriminatory reasons for the layoff; and Mazur-Taylor fails to show

pretext.

To establish a prima facie case of retaliation under Title VII, an employee must demonstrate

that:

    1)    the employee engaged in protected activity;[11]

    2)    the employer took some adverse employment action against the employee; and

    3)    a causal connection existed between the protected activity and the adverse action.

See Haulbrook v. Michelin North America, Inc., 252 F.3d. 696, 706 (4th Cir. 2001)(ADA); Causey

v. Balog, 162 F.3d 795, 803 (4th Cir. 1998)(ADEA and Title VII); Carter v. Ball, 33 F.3d 450, 460

(4th Cir. 1994)(Title VII); and Culver v. Gorman & Co., 416 F.3d 540 (7th Cir. 2005)(Title VII and

Equal Pay Act).  If the plaintiff establishes a prima facie case, the burden shifts to the defendant to

---

[11]Under Title VII, a plaintiff need not have filed a formal complaint with the Equal Employment Opportunity Commission or a state deferral agency to engage in a protected activity.  Complaints to supervisory or management employees concerning harassment or discriminatory treatment as well as informal complaints, filing of internal grievances, and complaints to an agency are included within the definition of protected activity.  Warren v. Halstead Indus., Inc., 802 F.2d 746, cert. denied, 487 U.S. 1218 (1988) and Mitchell v. Baldrige, 759 F.2d 80 (D.C. Cir. 1985).

produce evidence of a legitimate, non-discriminatory reason for the adverse action.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).  If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

Mazur-Taylor fails to establish a prima facie case of retaliation as to her layoff because she fails to establish a causal connection between Gaulden's inappropriate comments and her selection for the RIF.[12]  The alleged comments were made on September 22, 2003.  Mazur-Taylor, however, had been previously informed, in a letter dated September 2, 2003, of the layoff.  Thus, Mazur-Taylor fails to establish a causal connection because she has not shown that the person taking the alleged adverse employment action knew that she engaged in the alleged protected activity.  See Dowe v. Total Action Against Poverty, 145 F.3d 653, 657 (4th Cir.1998); (plaintiff failed to establish third prong of prima facie case of retaliation claim where decision maker was unaware that plaintiff had engaged in protected activity); Causey v. Balog, 162 F.3d at 803  ("Knowledge of a charge [of discrimination] is essential to a retaliation claim.");  Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001)(no causal connection because individual taking action against employee had no knowledge of protected activity).

---

[12]In her opposition memorandum, Mazur-Taylor appears for the first time to allege that the retaliatory action was the alleged preferential treatment of House, Frazier, and Gaulden.  Even if this claim is properly before the court, she has not shown that the alleged preferential treatment of these male employees (who were not similarly-situated to her for purposes of the alleged preferential treatment) were adverse employment actions.  See Von Gunten v. Maryland, 243 F.3d 858, 865-866 (4th Cir. 2001)(a Title VII retaliation claim does not require an ultimate employment action, but does require an action that alters the terms, conditions, or benefits of employment).  Additionally, these actions appear to have taken place prior to the protected activity and were made by someone other than Gaulden.

As discussed above, SCDPS has articulated a legitimate, non-discriminatory reason for Mazur-Taylor's layoff, the need to reduce operating costs due to budgetary cuts. Budgetary constraints or economic concerns are legitimate reasons for the strategic reorganization of a workplace.  See Mereish v. Walker, 359 F.3d 330, 335-336 (4th Cir. 2004).  Mazur-Taylor has presented no evidence to show that SCDPS's articulated reason for the layoff is pretextual.

<u>CONCLUSION</u>

Based on the foregoing, it is recommended that Defendant's motion for summary judgment (Doc. 22) be granted.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

June 14, 2006
Columbia, South Carolina